ROBERT S. BREWER, JR.
United States Attorney
Daniel C. Silva
Assistant United States Attorney
California Bar No. 264632
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 546-9713
Email: Daniel.C.Silva@usdoj.gov

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br>　v.<br><br>JEFFREY B. MIKLUS,<br><br>　　　　Defendant. | Case No.  20-CR-3328-GPC<br><br>UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM<br><br>Date: January 13, 2021<br>Time: 8:30 a.m.<br>　　　HON. GONZALO P. CURIEL |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, ROBERT S. BREWER, JR., United States Attorney, and Daniel C. Silva, Assistant United States Attorney, and hereby files its Sentencing Memorandum pursuant to Federal Rules of Criminal Procedure, Rule 32, and Local Rules of Practice for the United States District Court for the Southern District of California, Rule 32.1, for defendant JEFFREY B. MIKLUS.

This Sentencing Memorandum is based upon the files and records of this case. The United States of America joins the recommendation of the U.S. Probation Office and Defendant in recommending a sentence for Defendant of three years' probation, restitution of $650,396.00 (which has been fully satisfied by Defendant), no fine, and a special assessment of $100. As a term of probation, the United States further recommends that Defendant file tax returns, or amend tax returns already filed with the IRS, covering tax years 2015 to the present.

I.  **STATEMENT OF THE CASE**

On October 28, 2020, the United States filed a single-count Information charging Defendant JEFFREY B. MIKLUS with a violation of Title 26, United States Code, Section 7206(1), False Statements under Penalties of Perjury. Doc. Nos. 1 (the "Information"), 5 (the "Plea Agreement"), and 16 (Amendment to the Plea Agreement, submitted on December 1, 2020). On the same day the Information was filed, Defendant entered the Plea Agreement admitting his violation of Title 26, United States Code, Section 7206(1) for a willfully false tax return for tax year 2014. In the Plea Agreement, the parties agreed to restitution of $650,396.00 for tax due and owing to the Internal Revenue Service ("IRS") for tax years 2012, 2013, and 2014, plus penalties and interest. *See* Plea Agreement, at 12-16 (the "Restitution Addendum").

Within the Plea Agreement, Defendant waived the right to appeal and to collaterally attack every aspect of the conviction and sentence, including any restitution order up to $4,000,000.00. *See* the Plea Agreement, at XI. Defendant has already satisfied the full restitution of $650,396.00.

II.  **STATEMENT OF RELEVANT FACTS**

Section II.B. of the Plea Agreement sets forth the operative facts. In summary, across tax years 2012, 2013, and 2014, Defendant JEFFREY B. MIKLUS owned and managed Arizona-based pest control limited liability companies (collectively referred to as "Budget Brothers"). During these years, Defendant regularly withdrew funds from the Budget Brothers' bank accounts in the form of checks or cashier's checks, often made out to himself, which he deposited with casinos in and around the southwest United States, including casinos located in the Southern District of California. The amount of those checks was for the following approximate amounts and tax years: $329,056.62 for tax year 2012; $569,300.00 for tax year 2013; and $650,750.00 for tax year 2014 (collectively, the "Checks").

MIKLUS knew that the funds he obtained through the Checks: were for his personal benefit; thereby became personal income that he received from Budget Brothers;

2

and had to be reported on his personal income tax returns. By converting these funds for his personal use without reporting that income on his tax returns, MIKLUS intentionally failed to report that income anywhere on his 2012, 2013, and 2014 tax returns. As a result, his tax returns were willfully false in tax years 2012, 2013, and 2014, resulting in tax due and owing of: (i) $126,069.00 for tax year 2012; (ii) $243,742.00 for tax year 2013; and (iii) $280,585.00 for tax year 2012—for an aggregate amount of $650,396.00.

### III. GUIDELINES CALCULATION

#### A. Total Offense Level

The base offense level for tax crimes is based on the tax due and owing. Here that results in a 20-level base offense level under USSG § 2T1.1(a)(1) and § 2T4.1(H) because the tax loss is greater than $550,000.

The United States requests that Defendant be granted a 3-level downward adjustment pursuant to USSG § 3E1.1(a) for his acceptance of responsibility and his timely notification of his intention to enter a guilty plea. With that proposed downward adjustment, the adjusted offense level under the United States' calculation is 17.

#### B. Custodial Sentence

Because Defendant has no felony criminal history, his Guideline sentencing range at an adjusted offense level of 17 is 24-30 months.[1] The statutory maximum custodial sentence for this offense is 3 years in custody. In the Plea Agreement, the United States agreed to recommend a sentence with the advisory Guideline Range. The United States, however, recommends that the Court varies downward—similar to the recommendation in the PSR. *See* Doc. No. 18, ¶ 85. The United States recommends Defendant receive a sentence of three years' probation.

#### C. Fine

Pursuant to USSG § 5E1.2(c)(3), an offense level of 17 calls for a fine range of $10,000 to $95,000. The statutory maximum fine for this offense is $250,000. Title 18, United States Code, Section 3571(b)(3). The Guidelines lay out factors the Court should

---

[1] Under a separate filing under seal, the United States further recommends a departure of two levels under USSG § 5K1.1.

3

consider when imposing a fine, including the need for the combined sentence to reflect the seriousness of the offense and promote respect for the law. USSG § 5E1.2(d). In this case, chief among these considerations is the criminal restitution to which Defendant has agreed and already fully satisfied. The parties accordingly agreed in the Plea Agreement to recommend that the Court forego the imposition of a fine.

Significantly, the restitution is only one financial penalty that Defendant will incur. In addition, other financial penalties accrue as a result of his criminal admission, including: a 75% fraud penalty on the restitution amount, per Title 26, United States Code, Section 6663 or 6651(f); a 25% "failure to pay" penalty, per Title 26, United States Code, Section 6651(a); and additional, currently unknown tax due and owing for subsequent tax years, which will be calculated upon Defendant amending or filing those returns as a condition of probation (assuming he has not done so already).

### D. Supervised Release

The Court may impose a statutory maximum three year term of supervised release. Title 18, United States Code, Section 3583(b)(2). The Guideline range for supervised release is one to three years. USSG § 5D1.2(A)(2). In light of the recommendation of probation, the United States recommends no supervised release.

### IV. TITLE 18, UNITED STATES CODE, SECTION 3553 FACTORS

Section 3553(a) identifies factors the Court must consider when imposing a sentence. The ultimate sentence must be sufficient, but no greater than necessary, to satisfy the purposes of that section. Title 18, United States Code, Section 3553(a). While the Court has an obligation to consider the Sentencing Guidelines, the USSG calculation is simply one factor for consideration when determining the most appropriate sentence for a particular defendant. *United States v. Booker*, 534 U.S. 220, 257 (2005). Nothing in Title 18, United States Code, Section 3553 suggests that the Guidelines are to be given any greater weight that their fellow sentencing factors. *United States v. Zavala*, 443 F.3d 1165, 1171 (9th Cir. 2006). Instead, the Guidelines act as a "starting point" for the District Court." *United States v. Cantrell*, 433 F.3d 1269, 1280 (9th Cir. 2006).

Based on the relevant factors analyzed below, the United States recommends that Defendant be sentenced to a three year term of probation, restitution of $650,396.00, and a special assessment of $100. As a term of probation, the United States further recommends that Defendant file tax returns, or amend tax returns already filed with the IRS, covering tax years 2015 to the present.

### A. The Nature and Circumstances of the Offense and the Characteristics of the Defendant

The nature and circumstances of the underlying offense are straightforward: Defendant earned a large income from his businesses, which funded his robust interest in gambling. As described in more detail in a separate filing under seal, neither the casinos nor Defendant appear to have maintained all due records of Defendant's gambling activity during the subject tax years. The Checks, therefore, largely supplied the basis for calculating how much income Defendant converted from the Budget Brothers' bank account for his personal use. It is on that aggregate amount that Defendant owed tax, and which appeared nowhere on his tax returns.

Defendant's character is one of a hardworking businessperson, who has no record of prior criminal activity. Having built his business from scratch, it appears that he consistently, and primarily, enjoyed the fruits of his labor at casinos. There is no material evidence (if any) suggesting that Defendant's tax crime, or the withdrawal and use of the Checks, related to additional criminal activity by Defendant or anyone else—he simply did not include the "income" to himself from his business that came in the form of the Checks.

When law enforcement initially approached Defendant, he was cooperative, admitted the unlawful tax conduct, met with law enforcement across multiple years and meetings, and (as described in Defendant's sentencing memo, Doc. 19, at 2) cooperated with other criminal investigations. Beyond the letters submitted to the Court in advance of sentencing, Defendant's willingness to pay full restitution further demonstrates his contrition, and supports the joint recommendation of probation.

### B.   The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and to Protect the Public

By pleading guilty and paying full restitution, Defendant has made clear that he appreciates the seriousness of his conduct, and the harm his conduct caused to the nation's tax regime.

If the Court orders, as a condition of probation, that Defendant file tax returns, or amend tax returns already filed with the IRS, covering tax years 2015 to the present, the public is protected from further criminal tax crimes by Defendant. Through restitution, as well as the additional payment of tax penalties described above, the public will receive the financial obligations due and previously withheld by Defendant.

A sentence of imprisonment for an extended period of time, falling within the Guidelines Range, would provide no additional protection to the public from further crimes of the Defendant. To the contrary, Defendant is gainfully employed, supports a family, while owning and managing a large, but closely-held business.

### C.   The Kinds of Sentences Available

The Court may impose a custodial sentence, a special assessment, a fine, supervised release, or probation with associated conditions. There is nothing particularly aggravating or mitigating about the offense that is not taken into consideration by other Guidelines sections and policies.

### D.   The Need to Avoid Unwarranted Sentencing Disparities

The United States is not aware of many sentencings for tax crimes in the Southern District of California during the Covid-19 pandemic. Nevertheless, as this Court is aware, there have recently been a significant amount of early releases and compassionate releases for defendants who have underlying health conditions, are near the end of their custodial term, or due to other factors like age warrant release from custody before the term of incarceration is complete. As of December 28, 2020, the Bureau of Prisons has released more than 19,000 inmates to home confinement since March 2020. *See* https://www.bop.gov/coronavirus/faq.jsp (updated regularly).

As for more recent sentencings specifically related to tax crimes, most receive little

6

or no jail time in this District. For example:

- *United States of America v. John Baldwin, Sr.* (18-CR-1551-W). Received a sentence in 2019 of probation, and restitution of $83,359.26 (including interest) after pleading guilty (post-indictment) to two counts of violating Title 26, United States Code, Section 7206(1). Baldwin also forfeited $73,152.45 in a related criminal matter for violations of Title 31, United States Code, Section 5324 (failure to report certain cash transactions).

- *United States of America v. Judith Ann Paixao, et al.* (13-CR-3788-JM). Defendants received post-trial sentences in 2016 of six-months' and three-months' custody, after an approximately seventeen-day trial resulting in convictions on thirteen counts stemming from embezzlement and fraud from the operation of a tax-exempt non-profit organization, as well as approximately $150,000 in combined forfeiture and restitution.

- *United States of America v. Ho Sung Lim* (14-CR-3484-LAB). Received a sentence in 2015 of 5 years' probation with a condition that he file amended tax returns for the subject tax years, no fine, and restitution of $177,664.51 (including interest) after pleading guilty (pre-indictment) to one count of violating Title 26, United States Code, Section 7201 (tax evasion). Also forfeited $22,747.44 in related civil matter for violations of Title 31, United States Code, Section 5324 (structuring cash deposits to evade the filing of currency transaction reports).

- *United States of America v. James Francis Murphy, et al.* (12-CR-2497-AJB). Defendants received post-trial sentences in 2015 of forty-two-months' custody and twelve-months' of home confinement, after approximately two weeks of trial, followed by appeals, resulting in convictions for corrupt interference with administration of the IRS, and false claims, in violation of, respectively Title 26, United States Code Section 7212(a) and Title 18, United States Code, Section 287, as well as approximately $595,056.00 in combined restitution. At sentencing, the Court noted defendant's conduct was "a calculated, deliberate, and orchestrated

series of efforts…to avoid tax liability", which represented "a pretty offensive set of circumstances" to pursue an "all out scheme to defraud the government."

When comparing these cases to Defendant's, while further accounting for the significant number of early/compassionate releases during the Covid-19 pandemic, the PSR's recommendation of probation would not result in unwarranted sentencing disparities. The foregoing sentences in comparison were all aggravated to Defendant's; whether due to post-trial sentences, convictions on multiple counts, aggravated conduct, or with related criminal activity. Although Defendant's tax due and owing was higher than these cases, that is mitigated by Defendant's cooperative stance and satisfaction of that same tax in advance of sentencing. The foregoing examples, in contrast, show that Courts in the Southern District of California regularly sentence defendants to probation, or limited terms of incarceration, for crimes related to tax violations—even after multi-week trials, and convictions on multiple counts.

## V. CONCLUSION

For the reasons stated above, the United States recommends that Defendant receive a sentence of probation for three years, restitution of $650,396.00, and a special assessment of $100. As a term of probation, the United States further recommends that Defendant file tax returns, or amend tax returns already filed with the IRS, covering tax years 2015 to the present.

DATED: December 29, 2020

Respectfully submitted,

ROBERT S. BREWER, JR.
United States Attorney

s/ Daniel C. Silva
DANIEL C. SILVA
Assistant U.S. Attorney

8